DFCI Agreement No. 3725

## OPTION AGREEMENT

This Option Agreement, by and among the Dana-Farber Cancer Institute, Inc., having an office at 44 Binney St., Boston, MA 02115 ("DFCI"), and Gatekeeper Pharmaceuticals, Inc. having an address at 1170 Tuolumne Court, Millbrae, CA 94030 ("Gatekeeper") is made effective as of June 1st, 2009 ("Option Effective Date").

Whereas Gatekeeper desires to obtain a license to certain intellectual property solely owned by DFCI to permit Gatekeeper to commercially develop such intellectual property; and

Whereas DFCI wish to license Patent Rights (as later defined) to Gatekeeper, provided that Gatekeeper closes a Financing (as later defined).

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

ARTICLE I – Definitions

1.1   "Patent Rights" shall mean the patent rights as listed in the attached Exhibit B, plus any conversion, continuation, division or substitution thereon, any reissues, reexaminations or extensions thereof, any continuation-in-part application or patent that is entitled to the priority date of, and is directed specifically to subject matter specifically described in, at least one of the patents or patent applications described above, and any foreign counterparts of any of the foregoing.

1.2   "Field of Use" shall mean all therapeutic, diagnostic and prognostic applications relevant to human and/or animal markets. The research reagent market is excluded; provided, however, that use of research reagents in support of Gatekeeper's exercise of the license rights shall be permitted.

ARTICLE II – Option Grant

2.1   DFCI hereby grants to Gatekeeper an exclusive option ("Option") to enter into an exclusive license to Patent Rights (the "License Agreement"), under terms described in the Term Sheet attached as Exhibit A.

2.2   During the Option Period, as defined below, DFCI hereby grants Gatekeeper a non-exclusive, non-sublicenseable license, solely for internal research and development use. Such non-exclusive license shall permit Gatekeeper the right to use Patent Rights for (i) the evaluation, including without limitation contract lead optimization work (subject to the prior approval of DFCI, which shall not be withheld unreasonably), and (ii) the purpose of seeking financing from interested investors. The aforementioned non-exclusive license shall terminate upon the earlier of the expiration of the Option Period and any extension thereto or exercise of the Option by Gatekeeper.


EXHIBIT A

2.3   The Company shall not use the names of the DFCI or their employees in any form (written or orally) of fund raising or promotion or in connection with the sale of products, processes, devices, or designs without the prior written approval of DFCI. Notwithstanding the foregoing, Gatekeeper may identify DFCI as (i) the owners of the Patent Rights and (ii) the anticipated licensors of the Patent Rights and (iii) the affiliation of the founding scientists of Gatekeeper.

2.4   During the Option Period, DFCI shall not offer a license to the Patent Rights to any third party in the Field of Use.

## ARTICLE III – Term and Consideration

3.1   As compensation for the grant of the Option, Gatekeeper shall reimburse DFCI for all patent expenses associated Patent Rights incurred by DFCI prior to the Option Effective Date ("Patent Expenses") as follows :

(a) Twenty five percent (25%) of Patent Expenses upon execution of this Option Agreement. Gatekeeper shall make such payment to DFCI within ten (10) days of receiving an invoice from DFCI.

(b) The remaining balance of Patent Expenses after the payment set forth above in 3.1(a) paid to DFCI upon exercise of the Option.

(c) Gatekeeper will reimburse DFCI for all ongoing patent expenses associated with Patent Rights incurred by DFCI during the Option Period, (as herein defined) and any extension thereto.

(d) In the event, that Gatekeeper does not exercise the Option or otherwise does not enter into a license for the Patent Rights, except due to a breach by DFCI of this Option Agreement, the aforementioned balance of Patent Expenses shall immediately become due and payable to DFCI by Gatekeeper.

3.2   Gatekeeper may exercise the Option by providing written notice to DFCI at the addresses listed in Section 6.3 within twelve (12) months after the Option Effective Date subject to any extension as provided below in Article 3.3 hereunder (the "Option Period"), provided that Gatekeeper has received a at least two hundred and fifty thousand dollars ($250,000) of financing. (a "Financing"). Gatekeeper shall provide DFCI sufficient written evidence of such Financing.

3.3   If Gatekeeper exercises the Option during the Option Period, DFCI and Gatekeeper shall thereafter negotiate diligently and in good faith the definitive License Agreement which shall substantially contain the terms and conditions outlined in Exhibit A and such other commercially reasonable terms and conditions that are typical of transactions between academic institutions and industry. For the sake of clarity, Gatekeeper and the DFCI agree not to materially modify or add to the financial terms as outlined in Exhibit A unless as mutually agreed upon by DFCI and Gatekeeper; provided however that no party

DFCI Agreement No. 3725

shall be obligated to execute and deliver such definitive License Agreement unless and until Gatekeeper has raised the Financing.

3.4 Gatekeeper may extend the initial Option Period, by an additional six (6) months by providing written notice to DFCI prior to the expiration of the Option Period and making a payment of fifteen thousand dollars ($15,000) to DFCI of which amount shall be nonrefundable. Such payment shall be paid to DFCI by Gatekeeper no later than five (5) days after providing DFCI with written notice to extend the initial Option Period.

3.5 Notwithstanding the foregoing, if the parties do not, despite good faith efforts, execute the License Agreement within one hundred eighty (180) days of Gatekeeper's notice to exercise the Option, then the Option shall immediately terminate and the parties shall have no further obligation to the other, provided that Gatekeeper shall remain liable to DFCI for any patent expenses due with respect to Patent Rights (as defined below) and any payment due with respect to the extension of the Option Period, if so extended by Gatekeeper.

## ARTICLE IV – Confidentiality

4.1 The parties acknowledge that they have executed and delivered a mutually acceptable form of reciprocal non-disclosure agreement dated April, 9, 2009 that will remain binding upon them in accordance with its terms. DFCI acknowledge that Gatekeeper may disclose the terms of the Option Agreement to bona fide potential investors, employees, consultants and collaborators as reasonably required and under appropriate confidentiality provisions as defined below.

4.2 The parties further agree that any information disclosed pursuant to this Option Agreement shall be maintained in strict confidence and each will use all reasonable diligence to prevent disclosure except as provided for in Article 4.1. The obligations under this confidentiality clause shall remain in effect for the Option Term and a period of five (5) years thereafter. Gatekeeper and the DFCI shall not have any obligation of confidentiality with respect to information that:

(a) is in the public domain by use and/or publication at the time of its receipt from the disclosing party; or

(b) is developed independently of information received from the disclosing party; or

(c) was already in the recipients possession prior to receipt from disclosing party; or

(d) is properly obtained by recipient from a third party with a valid legal right to disclose such information and such third party is not under a confidentiality obligation to the disclosing party with respect to said information.

DFCI Agreement No. 3725

## ARTICLE V – Patent Expenses

5.1 DFCI shall use good faith efforts to keep Gatekeeper reasonably apprised of the Patent Expenses and ongoing patent prosecution upon request but no more often than on a monthly basis during the term of the Option Period and any extension thereto as applicable, provided however DFCI will contact Gatekeeper to discuss important prosecution decisions as they arise.

## ARTICLE VI – Miscellaneous

6.1 DFCI MAKES NO REPRESENTATIONS AND EXTEND NO WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR VALIDITY OF PATENT RIGHTS, CLAIMS, ISSUED OR PENDING WITH RESPECT TO THE PATENT RIGHTS.

6.2 This Option Agreement is not transferable and not assignable and any attempt to do so shall be null and void.

6.3 Any notice required to be given pursuant to the provisions of this Option Agreement shall be in writing and shall be deemed to have been given at the earlier of the time when actually received as a consequence of any effective method of delivery, including but not limited to hand delivery, transmission by telecopier, or delivery by a professional courier service or the time when sent by certified or registered mail addressed to the party for whom intended the address below or at such changed address as the party shall have specified by written notice, provided that any notice of change of address shall be effective only upon actual receipt.

To DFCI:
Vice President, Office of Research and Technology Ventures
Dana-Farber Cancer Institute, Inc.
44 Binney Street, BP 309
Boston, MA 02115
Email: anthony_delcampo@dfci.harvard.edu

To Gatekeeper:
John S. Chant
President, Gatekeeper Pharmaceuticals, Inc.
1170 Tuolumne Court,
Millbrae, CA 94030

6.4 This Option Agreement shall be construed and the rights of the parties determined by the laws of the Commonwealth of Massachusetts without regard from choice of law provisions.

6.5 The parties hereto are independent contractors and not joint venturers or partners.

DFCI Agreement No. 3725

6.6  The parties agree that this Option Agreement may be executed and delivered by facsimile, electronic mail, internet, or any other suitable electronic means, and the parties agree that signatures delivered by any of the aforementioned means shall be deemed to be original, valid, and binding upon the parties.

6.7  This Option Agreement, and the Exhibits attached hereto, contain the entire agreement of the parties hereto with respect to the matter covered hereby and all prior negotiations and agreements with respect hereto are of no force and effect. No subsequent modification hereof shall be made except in writing executed by DFCI and Gatekeeper.

IN WITNESS WHEREOF, the parties have executed this Option Agreement on the dates indicated below.

DANA FARBER CANCER INSTITUTE, INC.    GATEKEEPER PHARMACEUTICALS, INC.

BY: Anthony A. del Campo, MBA, CLP     BY:    John S. Chant, PhD

ITS: Vice President, Research          ITS: President
     and Technology Venture

DATE: 5/29/2009                        DATE: 05/30/2009

DFCI Agreement No. 3725

## Exhibit A

TERM SHEET

| | |
|---|---|
| **Type of License** | DFCI will grant to Gatekeeper and its Affiliates (as later defined) an exclusive, worldwide license under the Patent Rights, as listed on Exhibit B, to make, have made, use, sell, have sold, offer for sale, import, any product or provide any service, and practice any methods in connection therewith, in each case, in the Field of Use (as defined below). For the purposes of this Term Sheet, Affiliates means (i) any corporation or business entity of which fifty percent (50%) or more of the securities or other ownership interests representing the equity, the voting stock or general partnership interest are owned, controlled or held, directly by Gatekeeper. |
| **Licensed Product** | Any product or commercial service whose manufacture, use or sale would, but for the licenses granted, infringe a Valid Claim of a licensed Patent Right. |
| **Field of Use** | All diagnostic, prognostic and therapeutic uses in humans or animals. The research reagent market is excluded; provided, however, that use of research reagents in support of Gatekeeper's exercise of the license rights shall be permitted. |
| **Valid Claim** | Valid Claim shall mean either (a) a claim of an issued and unexpired patent or a supplementary protection certificate, which has not been held permanently revoked, unenforceable or invalid by a decision of a court, patent office or other forum of competent jurisdiction, unappealable or unappealed within the time allowed for appeal and that is not admitted to be invalid or unenforceable through reissue, disclaimer or otherwise (i.e., only to the extent the subject matter is disclaimed or is sought to be deleted or amended through reissue), or (b) a claim of a pending patent application that has not been abandoned, finally rejected or expired without the possibility of appeal or refiling, *provided, however*, that Valid Claim shall exclude any such claim in such a pending application that has not been granted within twelve (12) years following the earliest priority filing date for such claim. |
| **Right to Sublicense** | Gatekeeper will have the right to grant sublicenses consistent with the terms and conditions of the License Agreement, including the inclusion of provisions that obligate sublicensees to be diligent in bringing the subject matter of the sublicense into commercial use. |
| | Gatekeeper shall promptly notify DFCI in writing of the identity of any prospective sublicensee at the time that Gatekeeper enters into a binding term sheet or final sublicense with such prospective Sublicensee. Notwithstanding the foregoing, such notification shall be no less than ten (10) business days after the execution of a binding term sheet or final sublicense with such sublicensee. Gatekeeper shall forward to DFCI a copy of any and all fully executed sublicenses. |

DFCI Agreement No. 3725

Upon termination of the License Agreement for any reason, and at the written request of any sublicensee, DFCI shall assume Gatekeeper's duties and obligations solely with respect to the Patent Rights under each sublicense granted by Gatekeeper to such sublicensee, provided that such sublicensee is not in default under its sublicense, and provided further that such sublicensee agrees to be bound by applicable provisions of the License Agreement.

It is expressly understood that Gatekeeper shall not grant a sublicense to any company engaged in the sale of tobacco or tobacco-related products without the written consent of DFCI.

**Patent Expenses**   Gatekeeper shall pay DFCI for (i) any patent expenses associated with Patent Rights incurred by DFCI prior to the effective date (hereafter the "Effective Date") of the License Agreement and not already paid by Gatekeeper to DFCI and (ii) all ongoing patent expenses associated with the filing, prosecuting, maintaining and enforcing Patent Rights.

**Equity**   As partial compensation for the exclusive license to Patent Rights, Gatekeeper will issue such number of shares of Gatekeeper founding common stock to DFCI which represents 18% of Gatekeeper's founding stock. Exhibit C reflects the allocation of founding shares in Gatekeeper following the aforementioned stock issuance to DFCI.

**Running Royalty:**   Gatekeeper, its Affiliates, sublicensees or acquirers shall pay DFCI 2.75% of net sales of Licensed Products.

For each Licensed Product, Gatekeeper's obligation to pay running royalties to DFCI shall terminate on a country-by-country basis upon expiration of the last Valid Claim of a licensed patent right covering such product in the applicable country. Such running royalties shall not be subject to royalty stacking deductions.

**Diligence**   Gatekeeper will diligently pursue the development and commercialization of Licensed Products. Such efforts shall be consistent with sound and reasonable business practices and judgment.

Specific diligence will include but not be limited to the following requirements:

a) Gatekeeper will deliver a written Development Plan to DFCI within sixty (60) days of the Effective Date. Such Development Plan will detail Gatekeeper's plans to utilize the Patent Rights for the development and commercialization of a Licensed Product for an indication in the therapeutic market, and;

b) Gatekeeper will deliver a written Development and

DFCI Agreement No. 3725

Commercialization Report to the Institutions on or before each anniversary of the Effective Date. Such reports will describe the efforts by Gatekeeper, or any Affiliates or sublicensees, to bring one or more Licensed Products to the marketplace. The report shall contain sufficient detail to permit DFCI to monitor Gatekeeper's diligence compliance.

**Financial and Development Diligence**

Gatekeeper shall :

a) Raise a total of at least three million dollars ($3.0M) of financing within three (3) years of the Effective Date. Such financing may include funds from equity investment or other funding from corporate, government, private or investor sources (excluding debt and funding for services which Gatekeeper is required to perform for the benefit of a third party and

b) Gatekeeper, its Affiliates, or its sublicensees shall file an Investigational New Drug application (an "IND") or foreign equivalent for at least one (1) Licensed Product in the therapeutic Field of Use within five (5) years of the Effective Date.

c) Gatekeeper, its Affiliates, or its sublicensees shall file a New Drug Application (a "NDA") or foreign equivalent in the US, Japan or EU member country for at least one (1) Licensed Product in the therapeutic Field of Use within eight (8) years of the Effective Date.

**Developmental and Commercialization Milestone Payments**

For the first **two (2)** Licensed Products, in the therapeutic Field of Use, to reach the following milestone, Gatekeeper, its Affiliates, its sublicensees, its acquirers or bona fide commercial partners shall make the milestone payment to DFCI as set forth below:

(a) One hundred thousand dollars $(100,000) upon IND approval (or foreign equivalent) for clinical trial testing, payable within ninety (90) days of such event, and;

(b) Seven hundred thousand dollars ($700,000) upon NDA approval (or foreign equivalent) for commercial sale, payable within ninety (90) days of such event.

(c) One million dollars ($1.0M) upon the achievement of first ten million dollars ($10.0M) of aggregate gross revenue received from the sale of a Licensed Product in the US, Japan, or EU member country. Such milestone payment shall be payable within thirty (30) days of achievement of such milestone.

For the sake of clarity, payments due under (c) above, shall mean approved indications in the therapeutic Field of Use, whether a first or second approved indication for a Licensed Product, or a first approval of each of a first or second distinct Licensed Product,

DFCI Agreement No. 3725

**Sublicensing**	Gatekeeper shall pay DFCI a royalty based on a percentage share of income received by Gatekeeper from sublicensing of Patent Rights. Such revenue shall be defined to include sublicense issue fees, sublicense milestone payments, sublicense maintenance fees, upfront fees, technology access fees, and any similar payments made by sublicensees to Gatekeeper or Affiliates as consideration for sublicenses granted under Patent Rights, collectively "Sublicense Income". Excluded from Sublicense Income are payments made to Gatekeeper, its Affiliates or from sublicensees that are (a) fees for services, (b) payments related to equity investments in Gatekeeper from third parties, (c) equity received by Gatekeeper from third parties, (d) bona fide research funding from third parties or (e) running royalties on the sale of Licensed Products.

Such amounts shall be paid as follows:

- Fifty percent (50%) of Sublicense Income from all sublicensing agreements entered into by Gatekeeper prior to and including the first (1st) anniversary of the Effective Date;

- Twenty percent (20%) of Sublicense Income from all sublicensing agreements entered into by Gatekeeper subsequent to the first (1st) anniversary and prior to and including the third (3rd) anniversary of the Effective Date; and

- Fifteen percent (15%) of Sublicense Income of all sublicensing agreements entered into by Gatekeeper subsequent to the third (3rd) anniversary and prior to and including the fifth (5th) anniversary of the Effective Date;

- Ten percent (10%) of Sublicense Income of all sublicensing agreements entered into by Gatekeeper subsequent to the fifth (5th) anniversary of the Effective Date;

Payments with respect to Sublicense Income shall be non-creditable against any other payment obligations of Gatekeeper under the License Agreement; provided, however, that if Gatekeeper receives Sublicense Income as a result of a sublicense's achievement of one or more Development Milestones with respect to a Licensed Product for which any Development Milestone is due to DFCI as provided above, amounts paid by Gatekeeper to DFCI on account of such Sublicense Income shall be fully creditable against any amounts payable by Gatekeeper to DFCI for such Development Milestones with respect to the same Licensed Product and indication, as relevant. For the sake of clarity, an upfront or signing fee due Gatekeeper from a sublicense shall not be considered a payment of a Development Milestone. In addition, if Gatekeeper receives Sublicense Income as a result of a sublicensee's achievement of a Commercialization Milestone with respect to a Licensed Product for which a Commercialization Milestone is due to DFCI as provided above, amounts paid by Gatekeeper to DFCI on

DFCI Agreement No. 3725

|  |  |
|---|---|
|  | account of such Sublicense Income shall be fully creditable against any amounts payable by Gatekeeper to DFCI for such Commercialization Milestones with respect to the same Licensed Product and indication, as relevant. |
| **Reporting** | The License Agreement will include appropriate financial and diligence reporting obligations of Gatekeeper. |
| **Termination** | Institutions may terminate the License Agreement if Gatekeeper fails to meet any of the Diligence provisions or payment obligations, following notice of such breach and an opportunity to cure. The License Agreement will include a reasonable cure mechanism for failure to meet diligence milestones due to reasonable delays. |
|  | Gatekeeper may terminate the license with respect to Patent Rights at any time on thirty (30) days prior written notice, provided that Gatekeeper shall be obligated to reimburse DFCI for any Patent Expenses incurred by DFCI up to and including the date of termination. |
| **Other Terms** | The License Agreement shall include other terms typical of licenses between industry and academic entities, including but not limited to indemnification, insurance, retained rights for non-commercial internal research, reserved rights of Federal government and dispute resolution. |
| **Patent Prosecution** | DFCI will control patent prosecution, at Gatekeeper's expense, with Gatekeeper having reasonable rights of review and input and step-in rights if DFCI wishes to abandon any claim, application or patent. |
| **Patent Enforcement** | DFCI is responsible to enforcing its Patent Rights. Gatekeeper may request DFCI to take steps to protect Patent Rights when it has reason to believe that there is an apparent infringer. Gatekeeper shall present evidence of such infringement and DFCI will consider such evidence in good faith. DFCI will notify Gatekeeper as to whether it will pursue legal proceeding to protect against the alleged infringement. If DFCI brings a suit against the alleged infringer, Gatekeeper has the right to join DFCI as a party-plaintiff but DFCI shall be lead counsel. DFCI and Gatekeeper shall equally fund the costs of such litigation. . |
|  | If DFCI decides not to pursue litigation against the alleged infringer, Gatekeeper shall have the right to initiate the litigation at its expense. In such case, DFCI has a right to join Gatekeeper as a party-plaintiff and fund up to 50% of the legal proceedings. In such a case, Gatekeeper will be lead counsel. |
|  | In any legal proceeding brought by DFCI and funded solely by DFCI, any damages or other amounts recovered as a result of the proceeding will be retained by DFCI. |

DFCI Agreement No. 3725

In any legal proceeding brought by Gatekeeper and funded solely by Gatekeeper, any damages or other amounts recovered as a result of the proceeding will be retained by Gatekeeper but will be treated as Net Sales of Licensed Products.

In any legal proceeding funded jointly by DFCI and Gatekeeper, any damages or other amounts will first be used to reimburse Gatekeeper and DFCI for litigation costs not paid from royalties. The balance, if any, will be divided equally between the Parties.

**Technology Transfer**  DFCI shall engage in a know-how transfer of all relevant data and other tangible embodiments of Patent Rights.

**Assignment**  The rights and licenses of Gatekeeper under the License Agreement shall not be assignable. Notwithstanding the foregoing, Gatekeeper may assign such rights and licenses to a successor of Gatekeeper in connection with a merger, consolidation, or sale of all or substantially all of its assets relating to the agreement upon written approval by DFCI, where such approval shall not be withheld, provided such successor is not i) engaged in the sale of tobacco or tobacco products, or ii) engaged in litigation with DFCI at the time of assignment. For the sake of clarity, the financial terms of the proposed assignment shall not be grounds for withholding approval by DFCI.

**Governing Law**  Commonwealth of Massachusetts, without regard to any choice of law principle that would dictate the application of the law of another jurisdiction.

**DFCI Agreement No. 3725**

## **EXHIBIT B**

### **PATENT RIGHTS**

US Patent Application entitled "EGFR Inhibitors and Methods of Treating Disorders", Serial No. TBD, filed May 5, 2009, DFCI Reference No 1338.01

DFCI Agreement No. 3725

## EXHIBIT C

### Founding Shares of Gatekeeper Pharmaceuticals

| Founders | Initial Shares Approved by board of Gatekeeper on 3/31/2009 | Additional Shares to be approved | Total Founding Shares | Percentage Founders following Gatekeeper board approval |
|---|---|---|---|---|
| Jeffery Engelman | 1,000,000 | 0 | 1,000,000 | 14.6% |
| Nathanael Schiander Gray | 1,000,000 | 0 | 1,000,000 | 14.6% |
| Pasi A. Janne | 1,000,000 | 0 | 1,000,000 | 14.6% |
| Kwok-Kin Wong | 1,000,000 | 0 | 1,000,000 | 14.6% |
| DFCI | 0 | 1,229,000 | 1,229,000 | 18% |
| John S. Chant | 500,000 | 100,000 | 600,000 | 9% |
| Reserved for future allocation | 0 | 1,000,000 | 1,000,000 | 14.6% |
| **Total** | **4,500,000** | **2,329,000** | **6,829,000** | **100%** |